## Jacob Hinds v. J. E. McIntire.

1. INSTRUCTIONS—*Real Estate Broker's Commissions.*—The defendant placed his property in the hands of an agent for sale at a stipulated price, and the agent introduced the defendant to C., who made a proposition to exchange property in Paris for defendant's property, which was declined by the defendant, and negotiations between C. and defendant were then ended and definitely abandoned by the parties, and the defendant, through the efforts of the agent, took in exchange for his land, land in Texas belonging to W., and W. took property in Paris belonging to C. in exchange for the Texas land. *Held,* that an instruction that the fact that the deed was made from the defendant to C. would not entitle the agent to recover and directing the jury to find for the defendant, unless they believed that the agent was the efficient cause of the trade, was proper.

2. SAME—*Where the Evidence is Conflicting.*—Where the evidence is conflicting on material matters, the instructions should be accurate.

**Assumpsit**, for real estate broker's commissions. Appeal from the Circuit Court of Coles County; the Hon. Frank K. Dunn, Judge, presiding. Heard in this court at the November term, 1899. Reversed and remanded. Opinion filed June 12, 1900.

I. B. Craig, attorney for appellant.

Joe H. Winkler and Neal & Wiley, attorneys for appellee.

Mr. Justice Burroughs delivered the opinion of the court.

This was an action of assumpsit by appellee against appellant in which the declaration contained the common counts only, *ad damnum* being laid at $300.

The general issue was the only plea interposed. The trial was by jury, resulting in a verdict for $355 in favor of appellee, upon which judgment was rendered for $300, after a remitter of $55 was entered. Appellant seeks to reverse that judgment by prosecuting this appeal, and urges as grounds therefor, that the verdict and judgment are contrary to the evidence, and that the court gave improper and refused proper instructions.

The evidence shows that appellant, who lived at Oakland, in Coles county, Illinois, owned a farm of 276 acres in Edgar county, Illinois, which he desired to sell for $65 per acre, and he employed appellee, a real estate broker living also at Oakland, to find him a purchaser therefor, agreeing to pay him two per cent commission therefor. Afterward appellee informed appellant that a man by the name of Collier, who lived at Paris, Illinois, would trade him some property in Paris for his farm, and thereby induced appellant to go with him to Paris and see Collier and the property he had to trade. After viewing the property at Paris, and talking with Collier, appellant and appellee returned to Oakland without making the trade. The next day Collier came to Oakland to see appellant, and offered him for his farm, the Paris property, $2,000 cash, and Collier to assume payment of a mortgage indebtedness of $8,000, which appellant owed upon his farm.

Appellant refused that offer, but told Collier if he would raise the cash offer to $3,000 he would trade. This Collier refused to do, and returned to Paris that day. The next day Collier telephoned to appellee that he had concluded to withdraw the offer of trade he made to appellant the day before. In a day or two thereafter, appellant met appellee and told him he could not, and would not trade with Collier, to which appellee replied he knew it, because Collier had informed him by telephone that he withdrew his offer to trade.

Appellant, before this, had also employed one Taylor, a real estate broker at Newman, to find a purchaser for his farm; and several days after he had informed appellee that the Collier trade was off, he went to Newman to visit his son, who lived there. While appellant was at Newman, he saw Taylor, and in talking with him, spoke of the offer Collier had made him for his farm, and that he did not take it because he considered the price Collier put upon his Paris property was too high for him to use it. Taylor then informed appellant that he had a client named Wright, who owned some land in Texas which he desired to sell or trade, and he thought he might induce Wright to let Collier have the Texas land for his Paris property, if appellant would take the Texas land from Collier. Appellant told Taylor he would investigate the Texas land, and would then see about the trade. In a short time thereafter, Taylor brought appellant, Collier and Wright together, and they made a trade as follows :

Appellant deeded his farm to Collier, the consideration named in the deed being $18,000; the real consideration, however, being $1,750 cash received from Collier; a deed to appellant from Collier for two houses and a lot in Paris; a due bill for $1,000 given by Wright to appellant; a deed from Wright to appellant for the Texas land spoken of; Collier assuming to pay the $8,000 mortgage on the farm, and deeding Wright the large house and a lot in Paris in consideration of his deeding appellant the Texas land, and giving him the due bill for $1,000. The two houses and lot

deeded by Collier to Wright being the same property in Paris, embraced in the first offer of trade made by Collier to appellant.

There is practically no dispute between appellant and appellee concerning the foregoing facts. Appellee was not present when the trade was made nor had he any knowledge of the trade until after it was actually made. Appellee, however, swears that when he and appellant were returning from Paris, the day they went to see Collier and his property, that appellant said the big house and lot of Collier's was too high-priced for him, but that he would go to Newman and see Taylor, and if Taylor could find a buyer for the big house and lot at $6,000 he would trade with Collier.

Appellant, in his testimony, denies that he said this. The court, in effect, and at the instance of appellee, told the jury that if they believed from the evidence that an agreement was made between appellee and appellant, by which appellee was to find a buyer for appellant's farm and to receive a commission in case a sale thereof was made with a purchaser procured by appellee, the verdict must be for appellee, even though appellant accepted a less sum or a different trade for his farm.

In view of the fact that the evidence tended strongly to show that before the trade actually made with Collier, all former offers to trade with him had been called off, and appellee notified by appellant and Collier that no trade could or would be made between them because appellant could not use the big house and lot included in Collier's Paris property, and that appellant did not tell appellee he would make the trade in case Taylor could get some one to take that house and lot, we are of opinion that the instructions of the court should have submitted to the jury the question of the abandonment of the trade attempted to have been procured by appellee, and its omission was prejudicial to appellant.

The court refused appellant's instruction number 19, which was as follows:

"19. The court instructs the jury that if they believe from the evidence that the defendant placed his property in the hands of the plaintiff for sale at a stipulated price, and the plaintiff introduced the defendant to Collier and that Collier made a proposition to exchange property in Paris for defendant's property, which was declined by the defendant, and that negotiations between Collier and defendant were then ended and definitely abandoned by the parties, and that the defendant, through the efforts of Taylor, took in exchange for his land, land in Texas belonging to Wright, and that Wright took property in Paris belonging to Collier in exchange for the Texas land, the fact that the deed was made from the defendant to Collier would not entitle the plaintiff to recover and you should find for the defendant, unless you further believe the plaintiff was the efficient cause of the trade."

This instruction should have been given because it stated the law of the case applicable to the evidence, and in view of the fact that the instructions given at the instance of the appellee were short upon the very element embodied in this one, the court committed prejudicial error against appellant by refusing it.

The evidence being conflicting on material matters, required the instructions to be quite accurate, and as they were not, we reverse the judgment in this case, and remand it to the Circuit Court for another trial.